Keystone State Corp. et al. v. Union
Indemnity Co. et al.

*John W. Kephart* and *Daniel Lowenthal* of *Fox, Rothschild, O'Brien & Frankel,* for plaintiff Keystone State Construction Co.

*Frederick H. Spotts,* for plaintiff Nazareth Cement Co.

*Arthur Littleton,* for garnishee.

*Felix & Felix,* for ancillary receiver.

*John A. Skelton, Jr.,* and *Claude T. Reno,* Attorney General, for Insurance Commissioner of Pennsylvania.

*Albert M. Shapiro,* assistant city solicitor, for City of Philadelphia.

BROWN, JR., J., October 29, 1941.—A writ of foreign attachment was issued by Keystone State Corporation on January 12, 1933, in the Court of Common Pleas No. 4, as of March Term, 1933, No. 17, and a similar writ was issued by Nazareth Cement Company on January 16, 1933, in the Court of Common Pleas No. 2, as of March Term, 1933, No. 20, in which Union Indemnity Company, a Louisiana corporation, was named as defendant and Fidelity-Philadelphia Trust Company was summoned as garnishee. Each writ was served upon garnishee the day of issuance. Interrogatories and rule to answer directed to garnishee, and the latter's answer and plea of nulla bona in each case were filed, and the issues raised thereby in the two cases were tried together. The evidence disclosed no

dispute in the facts, and so verdicts were directed in favor of plaintiffs, the trial judge reserving the questions of law involved for subsequent determination. Motions for judgment n. o. v., filed in each case by garnishee and by the ancillary receiver of defendant, were argued before the court in banc, and as the two cases have in effect been combined, the essential facts and the applicable legal principles being similar, we will consider them as one.

The verdicts and findings directed by the trial judge and rendered by the jury were in favor of Keystone State Corporation in the amount of $62,518.06, and in favor of Nazareth Cement Company in the amount of $15,547.50, and that "garnishee has bonds in its hands belonging to defendant of the present value of $107,-500., subject to the prior rights of the City of Philadelphia, as defined and set forth in the agreement of April 28, 1925, and also subject to the rights of other parties as they appear in this proceeding" (i. e., the joint trial of the two cases).

The Ordinance of the City of Philadelphia of July 21, 1887, Ordinances and City Solicitor's Opinions, 1887, pages 246-247, requires, inter alia, that before the bond of a surety corporation, not chartered under the laws of Pennsylvania, may be taken by the city authorities as security for the faithful performance of contracts, it shall deposit the sum of $100,000. in the city in such manner as shall be approved by the city solicitor. Pursuant thereto defendant and the city solicitor entered into a written agreement on April 28, 1925, whereby defendant deposited with garnishee that sum in bonds of the United States. Subsequently, bonds of the City of Philadelphia, due July 1, 1947-1977, of the face value of $100,000., paying interest at the rate of four and one-quarter per cent per annum, and registered in defendant's name, were substituted therefor by defendant with the approval of the city solicitor in accordance with the terms of the agreement. The lat-

ter bonds were in the possession of garnishee when the writs of foreign attachment were served upon it.

Ordinarily, in order to effect an attachment of the interest of a defendant in a mortgage, note or other chose in action, the defendant's debtor, and not the person who holds the evidence of the indebtedness, must be made the garnishee: Seip et ux. v. Laubach et al., 333 Pa. 225, 228. "But debts due by the state and federal and subordinate governments cannot be reached in this way, because the government cannot be brought into court as garnishee": King, Brown & Co. v. Hyatt, 41 Pa. 229, 233. An attachment will not lie against a municipality or one of its fiscal officers: Bulkley v. Eckert et al., 3 Pa. 368, 369; City of Erie v. Knapp, 29 Pa. 173, 174-175. See also Appeals of City of Philadelphia et al., 86 Pa. 179, 182; Fairbanks Co. v. Kirk et al., 12 Pa. Superior Ct. 210, 211. It is to be noted, however, that the City of Philadelphia, the obligor of the bonds involved in the present controversy, was represented at the trial by an assistant city solicitor, and so it had full opportunity to defend as to anything which might have affected it. The suggestion made on its behalf as to the form of the verdicts to be rendered shows that it does not question its obligation to pay the bonds, but merely desires to safeguard its rights with respect thereto under its agreement with defendant of April 28, 1925.

Municipal bonds are liable to attachment, and a proper subject of sale under such process, for the payment of claims against the person who owns them, for "they are a regular article of commerce" and are "themselves articles of trade": King, Brown & Co. v. Hyatt, supra, 233. It is true that in that case the garnishee was indebted to the defendant, the debt being payable in municipal bonds, and that in the instant one there is no such indebtedness, but that difference does not affect the nature of such bonds or the principle that they are attachable without the municipality, as obligor, being named as garnishee.

Bonds of a private corporation, like municipal bonds, are the subject of sale in open market, and are transferable with such facility that an attachment served on the obligor is not likely to arrest them, and so the general rule throughout the United States is that corporate bonds can only be attached by serving such process upon the person having possession of them. No lien is acquired by service thereof "upon the corporation owning but not holding them": Husband v. Linehan et al., 168 Ky. 304, 313. Thus "an attachment may be levied on them at the place where they actually are, although not at the place where the corporation is and they are not": 4 Cook on Corporations (8th ed.), §765, p. 3420. "Registered coupon bonds of foreign corporations actually located within the state and within the jurisdiction of the court are property within the meaning of the statute and are liable to attachment": 10 Fletcher on Corporations, §4758, p. 69. See also De Bearn et al. v. Prince De Bearn, 115 Md. 668, 676. There is no doubt, therefore, that municipal like corporate bonds are subject to attachment in the jurisdiction where they are found, and that only the custodian of them, and not the municipality which issued them, is to be summoned as garnishee.

Shares of stock of a corporation, to which bonds have been likened, have been viewed differently. At common law they were not subject to attachment, but this has been changed by statute. See 10 Fletcher on Corporations, §4759, p. 70. In this state at present not only the stock of domestic corporations may be attached but also that of foreign corporations if by the law of the state of incorporation "the certificate embodies the share": Mills v. Jacobs et al., 333 Pa. 231. As was pointed out in that case, at pages 233-234, the power to attach depends upon "the existence or non-existence within the jurisdiction of the thing attached", and so when by the law of the state of incorporation a certificate of stock represents "the share to the extent of mak-

ing the situs of the share the jurisdiction where the certificate is found", it is "property" subject to attachment.

Furthermore, a writ of foreign attachment is directed against "the real or personal estate" of a defendant, under section 44 of the Act of June 13, 1836, P. L. 568, 12 PS §2891. The use of the words "personal estate" indicates clearly all kinds of personal property were intended to be subject to such a writ, and not merely "a debt due to the defendant", a "deposit of money made by him", or "goods or chattels pawned, pledged or demised", as provided for in section 35 of the Act of June 16, 1836, P. L. 755, 12 PS §2265, relating to attachment execution. Thus, "an execution attachment will not lie against a partner's interest in firm property", but such an interest is "personal property", and so it is liable to foreign attachment: Rankin v. Culver et al., 303 Pa. 401, 403, 404. Likewise, the contents of a safe deposit box, though not subject to attachment execution under section 35 of the Act of June 16, 1836, supra, are bound by a writ of fieri facias subsequently issued under section 23 of that Act, 12 PS §2115, for the latter writ "permits the seizure and sale of personal property of a defendant 'in any manner delivered or bailed'," in which "respect the proceeding is analogous to that begun by foreign attachment *(Klett v. Craig, 1 W. N. C. 28)* ": Williams v. Ricca et ux., 324 Pa. 33, 38-39. See also Trainer v. Saunders, 270 Pa. 451, 452. Accordingly, as a writ of foreign attachment binds "property or a right in property" of a defendant in the hands of a garnishee at the time of service (David E. Kennedy, Inc., v. Schleindl, 290 Pa. 38, 43), it is not essential that there be "a debt due to the defendant" from the garnishee in whose possession there is property of the defendant.

The agreement of April 28, 1925, under which the bonds were deposited with garnishee, provided, inter alia, that they "shall remain in the possession of" garnishee; that in case defendant "shall fail to pay * * *

any final judgment recovered against" it, garnishee was authorized "to sell and transfer" them and "pay such judgment"; that garnishee shall not "sell more than is sufficient from time to time to pay such judgments"; that garnishee "shall not transfer" them "to its name", under the power of attorney deposited with it, "until, under the terms of this agreement, it is authorized to sell" them; that they "shall be surrendered to" defendant "upon the presentation by it of a certificate from the City Solicitor" stating that the city "holds no outstanding obligations" of defendant, or one stating that defendant has had "all its obligations as surety" on outstanding undertakings with the city "underwritten by some other approved surety company", and also that "all interest and dividends accruing" thereon "shall be paid to" defendant. It is thus clear that the bonds in the possession of garnishee are the property of defendant. They are not owned by the city, but were deposited in escrow for its protection. Defendant's title thereto was not divested by delivery to garnishee with power of attorney to transfer, for title was to pass and the power was to be used only if defendant failed to pay a judgment obtained against it by or on behalf of the city. Interest on the bonds was to be paid to defendant, and it was entitled to their surrender on certificate of the city solicitor that defendant had no outstanding obligations. No such certificate has been received by garnishee, and whether or not there is any unpaid judgment against defendant does not appear of record. The bonds are still registered in defendant's name.

The verdicts were in accordance with section 58 of the Act of June 13, 1836, P. L. 568, 12 PS §2998, that "the jury shall find what goods or effects, if any, were in the hands of the garnishee at the time the attachment was executed as aforesaid, or afterwards, and also the value thereof", for the jury found that garnishee had bonds in its hands belonging to defendant and their

value. The inclusion of the respective amounts of the judgments previously entered against defendant in plaintiffs' favor may not have been necessary, but it does not appear that garnishee will be harmed thereby. Besides, the notes of the testimony taken at the trial show that the forms of the verdicts were fully discussed by the trial judge, and counsel for the parties and the city, before they were directed and rendered, and that no objection was then made to their containing the amounts of the judgments.

The bonds owned by defendant in the possession of garnishee are, of course, subject to the prior rights of the city under the agreement of April 28, 1925, and as there was no evidence with respect to whether or not the city had any claim against them, the trial judge was necessarily required to direct the jury to include in the verdicts such a qualification. No injury can result to garnishee, for its obligations under the agreement are expressly recognized and protected. The verdicts are an adjudication that at the time the attachment was served, and at the time of trial, bonds owned by defendant were in garnishee's hands, and the effect thereof is merely to transfer defendant's rights to plaintiffs. Execution of the judgments entered on the verdicts may not, of course, be had until the claims secured by the bonds are liquidated. But the fact that the precise amount of the bonds, which may be used to pay plaintiffs' claims, does not now appear of record, does not prevent the entry of the judgments, for the writs hold defendant's "interest, whatever it may prove to be": Rankin v. Culver et al., supra, 403. "That a stay of execution must be granted, pending the determination of the city's rights under the agreement, is no bar to the judgments to which plaintiffs are entitled": Christian et al., Exrs., to use, v. Bennett, Admrx., et al., 317 Pa. 23, 25. See also Mills v. Jacobs et al., supra, 232, 237, and Sniderman et al. v. Nerone et al., 136 Pa. Superior Ct. 381, 384, 387,

affirmed per curiam, in 336 Pa. 305, on the opinion of the Superior Court.

Garnishee will not be prejudiced by its inability to satisfy the judgments in the immediate future, because, irrespective of the judgments, it must hold the bonds under the agreement until the claims secured by the bonds are determined and liquidated, and that is all that will be required of it under the judgments. Besides, these proceedings, being foreign attachments, are primarily in rem, that is, the judgments will be against the bonds, binding defendant's interest therein, and execution may not be had against garnishee, as in the case of a judgment against it for its proper debt, unless it neglects or refuses to deliver the bonds upon demand. See Layman v. Beam, 6 Wharton 181, 185; Lorenz's Administrators v. King, 38 Pa. 93, 97; Frederick v. Easton, 40 Pa. 419, 421; Glenny v. Boyd, 26 Pa. Superior Ct. 380, 383; David E. Kennedy, Inc. v. Schleindl, supra, 41-43, and Nazareth Cement Co. v. Union Indemnity Co. et al., 116 Pa. Superior Ct. 506, 510. Hence, no personal liability will be imposed upon garnishee so long as it retains the bonds and surrenders them upon order of the court.

The suggestion that the bonds "were not actually seized, levied upon or attached" is without merit. Service of a writ of foreign attachment, with summons against the garnishee, is valid "without a specific seizure or attachment of *goods* or *credits*", or "any manual handling of the property," and the attachment binds the "property of the defendant coming into the hands or possession of the garnishee after the service of the attachment, which was never seized, levied upon or attached by the sheriff . . . ; *provided* that there was property of the defendant in the hands of the garnishee . . . belonging to the defendant in the attachment at the time the attachment was served on the garnishee . . .": Rex et al. v. Paramount Rubber Co. of New Jersey, 110 Pa. Superior Ct. 536, 541-543. Hence, as

the bonds were in garnishee's possession when service was made upon it, there is no question that they are bound by the attachment.

It has already been determined by the Superior Court, in affirming the order of the Court of Common Pleas No. 2 discharging rule to quash the attachment in the Nazareth Cement Company case (116 Pa. Superior Ct. 506), and by this court, in discharging rule to strike off the judgment and to dissolve the attachment in the Keystone State Corporation case (35 D. & C. 624), from which decision no appeal was taken, that the appointment of receivers for defendant in Louisiana, the state of its domicile, *before* the attachments were levied, and of ancillary receivers in this state by the United States District Court for the Eastern District of Pennsylvania, and by the Court of Common Pleas of Dauphin County, *after* they were executed, affected neither the validity nor the lien of the attachments. The contentions to the contrary now asserted were considered in the two opinions, and so further discussion is unnecessary, except to point out that plaintiff will not be required to go into the Federal Court, or the Dauphin County Court, to enforce the judgments. The actions being primarily in rem, and the Court of Common Pleas of Philadelphia having first acquired jurisdiction of the bonds, it is entitled to maintain and exercise that jurisdiction, and to retain control over the bonds in order "to effectuate its final judgment", to the exclusion and free from the interference of any other court: Thompson, Tr., et al., v. Fitzgerald et al., 329 Pa. 497, 505, 510, affirmed in Princess Lida, etc., et al., v. Thompson et al., Trustees, 305 U. S. 456, 466-467.

The writ in the Keystone State Corporation case, which was issued in the Court of Common Pleas No. 4, was served on garnishee before the one in the Nazareth Cement Company case was issued in the Court of Common Pleas No. 2. Accordingly, the rights of the Nazareth Cement Company are subordinated to those of

Keystone State Corporation with respect to the bonds, and the latter's judgment in the Court of Common Pleas No. 4 must be fully satisfied before the former may levy upon the bonds.

The motions for judgment n. o. v. are, therefore, dismissed, and the following judgment and order is entered in *each* case:

And now, October 29th, 1941, it is ordered, adjudged and decreed that the Fidelity-Philadelphia Trust Company, garnishee, had at the time the attachment was executed, and now has, in its possession property, to wit, City of Philadelphia 4¼ per cent bonds due July 1, 1947-1977, belonging to the Union Indemnity Company, defendant, of the value of $107,000.; that the Keystone State Corporation, plaintiff, shall have execution of its judgment (in the Court of Common Pleas No. 4, as of March Term, 1933, No. 17) in the sum of $62,518.06, with interest thereon, to be levied of said bonds, or so much of them as shall be sufficient to satisfy its claim; that the Nazareth Cement Company, plaintiff, shall have execution of its judgment (in the Court of Common Pleas No. 2, as of March Term, 1933, No. 20) in the sum of $13,547.50, with interest thereon, to be levied also of said bonds, or so much of them as shall be sufficient to satisfy its claim, after the judgment of the Keystone State Corporation has been fully satisfied; that the said bonds are subject to the prior rights of the City of Philadelphia, as defined and set forth in the deposit agreement between defendant and the City of April 28, 1925; that until the rights of the City with respect to the bonds are finally determined, execution of plaintiffs' judgments shall not be had, and also that garnishee shall retain and hold the said bonds in its possession subject to the further order of this Court (the Court of Common Pleas No. 4).